[Crim. No. 4891. Fifth Dist. Feb. 22, 1982.]

THE PEOPLE, Plaintiff and Respondent, v.
HENRY GARDNER QUIRK, Defendant and Appellant.

620

622

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, and Eric J. Coffill, Deputy State Public Defender, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, James T. McNally and Robert G. Mendez, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

RODRIGUEZ, J.*—

STATEMENT OF CASE

Appellant was charged on August 30, 1979, in count one with murder by the use of a firearm (Pen. Code, §§ 187 and 12022.5), in count two with burglary resulting in great bodily injury (Pen. Code, §§ 459 and 12022.7), and in count three with assault with a deadly weapon by use of a firearm (Pen. Code, §§ 245, subdivision (a) and 12022.5).

*Assigned by the Chairperson of the Judicial Council.

A Penal Code section 1538.5 motion to suppress statements made to a Dr. Matychowiak was denied and on the date the trial commenced, appellant changed his plea of not guilty and entered a plea of not guilty and not guilty by reason of insanity.

The jury convicted appellant of voluntary manslaughter with the use of a firearm, burglary with great bodily injury, and assault with the use of a firearm.

The trial court declared a mistrial on the sanity issue of the case but before he could be retried on that issue, appellant withdrew his plea of not guilty by reason of insanity on the condition that he receive two years in prison for the offense of voluntary manslaughter with a two-year enhancement for use of a firearm for a total prison term of four years. The appellant was in fact sentenced to four years on count one with a stay being ordered on counts two and three. Appellant filed a timely notice of appeal, as well as a motion to vacate the judgment of conviction on the ground that the court reporter was unable to provide a complete transcript of the district attorney's first summation to the jury. This motion was denied for failure to establish prosecutorial misconduct and because appellant had not attempted to obtain a settled statement on appeal.

## STATEMENT OF THE FACTS

While in her trailer at Lake Isabella on the morning of August 3, 1979, Beulah Lovley heard a shot. She saw Dovie Lampkins coming toward her trailer, and after Lampkins entered the trailer, Lovley locked the sliding glass door. The glass was smashed and a hand clutching a revolver came through the sliding glass door. Lovley ran to her bedroom and hid in the closet, leaving Lampkins alone in the kitchen. She heard Lampkins say, "Please Hank, please, Hank," and she heard three shots. After leaving the closet a few moments later she found Lampkins lying across her couch in the front room. She saw appellant outside the front gate of her fence and returned to the closet for a few minutes before calling the police.

Lovley's neighbors, Joseph and Mary Marengo, drove up to the gate of their home at about 11 a.m., as appellant was closing Lovley's gate.

Appellant stated he did not want witnesses and he pointed a gun at the windshield of their car. When appellant pulled the trigger, the

weapon did not fire and he threw the gun at the car. He then walked over to the driver's side and struck Mr. Marengo in the face.

When officers responded to the shooting, they arrested appellant who was standing in the middle of Alta Sierra Street. Appellant was yelling and holding a revolver in his left hand. Appellant stated that he had killed Dovie Lampkins, that no one would do anything, and that he couldn't take it any longer. When taken into custody, the gun with four expended cartridges and two empty chambers was seized. At the police station, several shotgun shells were found in his pocket.

The autopsy disclosed four gunshot wounds, two of which were fatal. The victim's forearm was also broken. A search of Lovley's trailer uncovered three slugs in the couch area and a pillow disclosed pellet holes and shotgun wadding. Blood stains were found along the route from the victim's residence to Lovley's trailer.

DEFENSE EVIDENCE

Appellant's wife testified to moving to their residence in 1971, with the victim Lampkins living directly across the street. She testified to numerous incidents of harrassment by the victim over the years. They included name-calling, threats, reports to the police, egg throwing, telephone calls, being observed with binoculars, trespassing and damage to property. These incidents were reported to the police, and there were attempts to either sell their home or buy the victim's home. Appellant and his wife finally built a wall in front of their picture window to prevent the victim from looking into their home with binoculars.

On July 29, 1979, appellant and his wife spoke to a deputy district attorney about the harrassment by the victim, but no action was taken. Appellant became greatly upset, and he drank a great deal on the night of August 1, 1979, and stayed home all day and drank on August 2. Appellant began drinking again early in the morning of August 3, after he discovered what he thought was an attempt to poison his dog.

The owner of the Kernville Club testified appellant had arrived at his club about 8:30 a.m. on August 3 and left between 10 and 11 a.m. after consuming about four drinks. The club owner testified about appellant's expression of anger at the lack of assistance he was receiving from the authorities.

On his return to his house, appellant threw hamburger against the wall, threw chairs around, pulled the phone out of the wall and left the house. His wife testified he had never done anything like that before.

Appellant had retired from the Merchant Marine after 26 years of service and was then employed as a security guard. Appellant remembered nothing between the time he went to the Kernville Club in the morning on August 3 and the time he was later searched at the police department. He claimed no recollection of going to the victim's house with a gun or of shooting her.

A clinical psychologist, James Sanderson, examined appellant before trial and diagnosed his condition as obsessive-compulsive, with elements of paranoia. Sanderson also found some mild cortical impairment which could be caused by heavy drinking over a period of 20 years and could be affected by diabetis. He also concluded that appellant was "out of his head, . . . not aware of exactly what he was doing as he carried out that rage." Sanderson testified that appellant could not have formed the intent to kill.

Steven Wilson, a psychiatrist, testified that appellant "exploded," and "went berserk for a brief period of time in his life." He also testified that in his opinion appellant did not have the ability to form the intent to kill the victim, and suffered from a mental disease or defect.

In rebuttal, Dr. Matychowiak, called by the prosecution, testified that appellant suffered from no mental disease or defect which interfered with his capacity to understand or appreciate the criminality of his conduct.

## DISCUSSION

Appellant's primary contention on appeal is that the trial court committed prejudicial error in ruling that statements made by appellant to a psychiatrist hired by the district attorney were admissible as voluntarily given.

Appellant was arrested on August 3, 1979, and was fully informed of his *Miranda* rights by the police. He understood his rights and intelligently waived them at that time. He provided a statement which in effect amounted to a lack of knowledge of the events of the day in question. However, on August 6th, the day before appellant was originally

scheduled to be arraigned, the Kern County District Attorney's office contacted Dr. Matychowiak to have him interview appellant and prepare a report for the police. This same day Dr. Matychowiak met with appellant at the jailhouse, and introduced himself as a psychiatrist who had been asked by the district attorney to see him. At this point appellant asked the psychiatrist whether or not his wife had hired an attorney and then stated that he really wanted a private attorney. Appellant and Dr. Matychowiak proceeded to enter into a discussion which resulted in a rather detailed report prepared by the psychiatrist. ·

Dr. Matychowiak testified at the guilt phase of the trial. He rebutted the defense psychiatrist's opinions that appellant suffered from diminished capacity on the day of the crime. In the interview with Dr. Matychowiak appellant did not remember any details of the incident in question. He did provide a rather detailed description of past problems with the victim. Dr. Matychowiak's testimony did not provide any incriminating disclosures or confessions by appellant concerning the day in question. Rather, Dr. Matychowiak's testimony centered on appellant's description of his past problems with the victim and his professional opinion concerning these disclosures. In addition, much of Dr. Matychowiak's testimony related to his evaluation of statements that appellant had made to others and to the police after the incident in question.

Appellant does not contest the validity of the *Miranda* warnings given on August 3, 1979. However, appellant contends that he was not aware of his rights at the time of the interview with Dr. Matychowiak because the prior warning by police made three days earlier was not "adequate in these circumstances." ■ This argument therefore raises the issue whether it was necessary that appellant be readvised of his *Miranda* rights before being interviewed by Dr. Matychowiak, the psychiatrist hired by the Kern County District Attorney's office.[1]

■ Although the rule is well established under *Miranda* v. *Arizona* (1966) 384 U.S. 436 [16 L.Ed.2d 694, 86 S.Ct. 1602, 10 A.L.R.3d 974], that prior to a custodial interrogation a suspect must be advised of his constitutional rights, subsequent decisions have established that *Miranda* warnings are not necessary prior to every interrogation. A *Miranda* warning is not required before each custodial interrogation;

---

[1]Respondent concedes that Dr. Matychowiak was an agent of the district attorney. (See *People* v. *Walker* (1972) 29 Cal.App.3d 448, 453-454 [105 Cal.Rptr. 672].)

one warning, if adequately and reasonably contemporaneously given, is sufficient. (*People* v. *Johnson* (1969) 70 Cal.2d 469, 477 [74 Cal.Rptr. 889, 450 P.2d 265].) In *People* v. *McFadden* (1970) 4 Cal.App.3d 672, 687 [84 Cal.Rptr. 675], the court stated: "Where a defendant is given one adequate warning of his constitutional rights relating to police interrogation, and he intelligently waives such rights, it is not incumbent upon the officers to thereafter repeat the warning each time they wish to interrogate him."

However, this court has held in *People* v. *Bennett* (1976) 58 Cal. App.3d 230, 238 [129 Cal.Rptr. 679], that whether the prior *Miranda* warning is adequate depends upon the particular facts and circumstances of the case, including the background, experience and conduct of the accused. Respondent contends that the questioning by the psychiatrist on August 6 was "reasonably contemporaneous" with the *Miranda* warnings given by the police on August 3. Respondent cites *People* v. *Booker* (1977) 69 Cal.App.3d 654, 665 [138 Cal.Rptr. 347]; *People* v. *Brockman* (1969) 2 Cal.App.3d 1002, 1006 [83 Cal.Rptr. 70], and *People* v. *McFadden, supra*, 4 Cal.App.3d 670, 687. In *Booker* an adequate warning three days prior to a subsequent interrogation was held to be reasonably contemporaneous; however, the defendant in *Booker initiated* the subsequent interrogation by stating he wished to make a statement to police officers. At this point the defendant was readvised of his *Miranda* rights, but the warnings were incomplete in that the officers did not mention that anything he said might be used against him. Booker was asked if he understood his rights and asked if he wished to waive them and make a statement, to which he responded in the affirmative. (*People* v. *Booker, supra*, 69 Cal.App.3d at pp. 660-661.) Similarly, the defendant in *People* v. *Brockman*, after he had been fully advised of his *Miranda* rights, indicated that he wished to make a statement in a couple of days. Two days later, the defendant made admissions and other incriminating statements after indicating that he had previously been warned about his rights. (*People* v. *Brockman, supra*, 2 Cal.App.3d at pp. 1005-1006.) In *People* v. *McFadden* the defendant also was asked at a subsequent interview whether he remembered being advised of his rights on the day before, and he replied that he did.

Unlike *Booker, Brockman*, and *McFadden, supra*, appellant here did not initiate the subsequent interview. He was not asked by Dr. Matychowiak whether he had previously been advised of his rights, he

was not asked whether he understood his rights or whether he wanted an attorney, and he did not state that he wished to waive his rights and speak with the doctor.

This court in *People* v. *Bennett, supra*, 58 Cal.App.3d 230, addressed the issue of what constitutes reasonably contemporaneous interrogation. In *Bennett*, the defendant was interviewed on four separate occasions by a prosecution-employed psychiatrist, beginning approximately six weeks after the defendant was advised of his rights and consented to an interview with the police. Although the psychiatrist testified that he discussed defendant's rights with him prior to the first interview, the record was inadequate to show a complete advisement and waiver. (*Id.*, at pp. 233-237.) The court's discussion is highly relevant to the problem presented in this case: "Whether the prior *Miranda* warning is adequate depends upon the particular facts and circumstances of the case including the background, experience and conduct of the accused. [Citations.] While the phrase 'reasonably contemporaneous' is incapable of precise definition, 'contemporaneous' means 'at or near the same time' and is synonymous with 'simultaneous' and 'concurrent.' [Citation.] Two cases illustrate the limited scope of the exception to the general rule that a contemporaneous warning is required under *Miranda* at the outset of each interrogation. In *People* v. *Bynum, supra*, 4 Cal.3d 589, 596 [94 Cal.Rptr. 241, 483 P.2d 1193], the defendant was arrested in his home for the murder of the victim, and he was immediately advised of and waived his constitutional rights. The police then took the defendant to the police station and, some 30 to 40 minutes later, took his statement. The statement was deemed to be the same interrogation contemplated by the officers and understood by the defendant when he waived his rights. 'It was reasonably within the time served by the warning.' (4 Cal.3d at p. 600.) In *People* v. *Meneley* (1972) 29 Cal.App.3d 41, 58 [105 Cal.Rptr. 432], the time lag between the advisement and subsequent interview was 15 minutes. Under these cases, the December interviews with Dr. Lunde cannot, under any stretch of the imagination, be deemed to have been 'reasonably contemporaneous' with the October 22 interrogation. The October 22 waiver was obviously intended by the police and understood by appellant to cover the police interrogations on that day and not the interviews with Dr. Lunde six weeks later." (*Id.*, at p. 238.)

The People argued in *Bennett* that, in view of the defendant's level of educational attainment (college graduate), prior waiver of rights and the "reminder" of rights by the psychiatrist, an inference of a knowl-

edgeable and voluntary waiver could be drawn from the defendant's conduct in speaking to the doctor. The court rejected this argument for three reasons, all of which are pertinent here. First, *Miranda* expressly holds that "no amount of circumstantial evidence that the person *may have been* aware" of his rights will suffice (*Miranda* v. *Arizona, supra,* 384 U.S. at pp. 471-472 [16 L.Ed.2d at p. 722], italics added); "[t]he prosecution was required to prove that appellant was *in fact* aware of his rights and *in fact* knowingly, intelligently and voluntarily waived them . . . ." (*People* v. *Bennett, supra,* 58 Cal.App.3d 230, 239.) Second, because the trial court in *Bennett* failed to expressly adjudicate the inferences, on review, determination of waiver could be predicated only on the undisputed facts. Finally, ". . . there is a vast difference between a defendant talking to police officers in the cold and normally hostile atmosphere of a police station and talking to a psychiatrist in the comfortable environment of his office. Regardless of Dr. Lunde's initial advice to appellant that whatever he said could be turned over to the authorities, it is apparent that during the six hours of interviews Dr. Lunde established a relationship of confidence with appellant; yet it is not clear that appellant fully understood and appreciated the nature of that relationship." (*Id.,* at p. 239.) The court concluded that the prosecution had failed to meet its burden of showing a voluntary and intelligent waiver of rights. (*Id.,* at pp. 239-240.)

Respondent contends that *People* v. *Bennett* is distinguishable from the case at bar in that in *Bennett* the defendant was questioned by a psychiatrist *six weeks* after the defendant was properly advised of his rights and the examination in *Bennett* was conducted in the psychiatrist's *office* rather than the police station. However, the key determination in each case is whether the *Miranda* warning sufficiently warns the defendant of his constitutional rights so that he has an understanding of these rights during any subsequent interrogation. (*People* v. *Brockman, supra,* 2 Cal.3d at p. 1006.) Inferences from circumstantial evidence that tend to show appellant *may* have been aware of his rights are not enough. (*People* v. *Bennett, supra,* 58 Cal.App.3d 230, 239, citing *Miranda* v. *Arizona, supra,* 384 U.S. 436, 471 [16 L.Ed.2d 694, 721-722].) As reiterated in *Bennett,* the prosecution is required to prove that appellant was in fact aware of his rights and in fact knowingly, intelligently and voluntarily waived them before talking to Dr. Matychowiak. In the instant case there is no evidence in the record that appellant was *in fact* aware of his rights before talking to Dr. Matychowiak.

In addition, while the interview with the psychiatrist did occur at the police station, it is significant to note that this subsequent interrogation was not conducted by a police officer, but rather by a psychiatrist. If the person conducting the interview is not so readily identifiable as an agent of the prosecution or the police, who originally gave the *Miranda* warnings, it would be more encumbent upon the interviewer to readvise a defendant of his *Miranda* rights. Respondent, however, stresses that Dr. Matychowiak told appellant that he was there at the request of the district attorney and that he would submit a report of their meeting to the district attorney. However, Dr. Matychowiak did not advise appellant that he had the right to have an attorney before he talked to him; did not advise appellant that he had a right to have a court-appointed attorney advise him before he talked to Dr. Matychowiak; did not advise appellant that he did not have to talk to him at all; did not advise appellant that if he did talk to him, the contents of the conversation could be used against appellant in court. Furthermore, appellant did not initiate the subsequent interview with the psychiatrist and Dr. Matychowiak did not ask him if he had been previously advised of his rights, factors that the courts considered relevant in the *Booker, Brockman* and *McFadden* cases, *supra.*

Assuming arguendo that the statements made by appellant in the interview with Dr. Matychowiak were reasonably contemporaneous with the *Miranda* warnings given by the police three days earlier, the next major issue raised is whether appellant invoked his *Miranda* rights early in the interview when he asked Dr. Matychowiak if his wife had hired an attorney.

The trial court ruled that appellant did not intend to invoke his right to remain silent or invoke his right to have counsel present before being interviewed by Dr. Matychowiak on August 6, 1979. The trial court reasoned that appellant was not requesting counsel but rather stating a desire to be represented by private counsel as opposed to a public defender. The court stated: "One phrase that troubles me is that he really wanted a private attorney and if that were the extent of the evidence we would be dealing with, I would not be able to or I would not find beyond a reasonable doubt that the privilege was waived.

"However, Dr. Matychowiak testified the emphasis was on private in that conversation, that Mr. Quirk really wanted a private emphasis [sic] attorney and then the conversation that Mr. Quirk went into about, there are some things I want to talk to you about, some things I

don't want to talk to you about indicates two things to me; one, that he recognized that he had the right not to say some things, not to talk, at least there were things he didn't want to talk about; and, two, indicates a desire to talk about some subjects."

Appellant contends that his stated desire for a private attorney and his reluctance to talk of certain matters constituted an invocation of his *Miranda* rights which required all further questioning to cease.

■ The court in *Miranda* stated that: "[i]f the individual indicates *in any manner*, at any time prior to or during questioning, that he wishes to remain silent, the interrogation must cease." (*Miranda* v. *Arizona, supra,* 384 U.S. 436, 473-474 [16 L.Ed.2d 694, 723], italics added.)

In addition, a suspect need not make an express statement that he wishes to invoke his Fifth Amendment privilege. (*People* v. *Superior Court (Zolnay)* (1975) 15 Cal.3d 729, 736 [125 Cal.Rptr. 798, 542 P.2d 1390].) The court in *People* v. *Randall* (1970) 1 Cal.3d 948, 955 [83 Cal.Rptr. 658, 464 P.2d 114], has stated: "However, a suspect may indicate that he wishes to invoke the privilege by means other than an express statement to that effect; no particular form of words or conduct is necessary. 'A suspect may indicate such a wish in many ways....'

"To strictly limit the manner in which a suspect may assert the privilege, or to demand that it be invoked with unmistakable clarity (resolving any ambiguity against the defendant) would subvert *Miranda's* prophylactic intent. Moreover, it would benefit, if anyone, only the experienced criminal who, while most adept at learning effective methods of coping with the police, is least likely to find incarceration and police interrogation unnerving. Conversely, it would operate most severely on the ignorant and unsophisticated suspect who is the most susceptible to the compulsion arising from the tactics of custodial interrogation and consequently most in need of the protections outlined by *Miranda.*"

A point not addressed by either of the parties in the instant case is the *timing* of appellant's question asking whether his wife had gotten an attorney and his statement that he wished he had a private attorney. Dr. Matychowiak's testimony and report indicates that immediately after introducing himself and explaining the purpose and nature of his visit, appellant responded by asking if his wife had contacted an attorney. He then stated that he wanted a private attorney, naming a

particular individual. At this point appellant had been in jail for three days. There was some indication that he hadn't been able to talk with his wife. The psychiatrist testified that appellant seemed anxious and pressured. Appellant's first question upon being told that the psychiatrist was there at the request of the district attorney's office was to ask whether his wife had gotten an attorney. Dr. Matychowiak admitted that that led him to believe appellant was interested in getting an attorney.

As stated above, no particular form of words or conduct is necessary to invoke the Fifth Amendment privilege and a suspect may indicate the desire to invoke the privilege in many ways. Whether appellant desired to have a private attorney in contrast to a public defender does not nullify appellant's invoking of his *Miranda* rights. A request for an attorney is deemed to be an invocation of a defendant's *Miranda* rights (*People* v. *Ireland* (1969) 70 Cal.2d 522, 536 [75 Cal.Rptr. 188, 450 P.2d 580, 40 A.L.R.3d 1323]; *People* v. *Randall, supra,* 1 Cal.3d 948, 957; *People* v. *Walker, supra,* 29 Cal.App.3d 448, 453.)

Under these facts we find that when appellant asked the psychiatrist whether his wife had contacted an attorney immediately after being told that the psychiatrist was there at the request of the district attorney's office this was sufficient to invoke his Fifth Amendment *Miranda* rights.

In addition, while the phrase "reasonably contemporaneous" is incapable of precise definition, the fact that the time lag between the *Miranda* advisement and the subsequent interview with Dr. Matychowiak was several days, rather than a few hours, when coupled with the fact that it could reasonably be interpreted that appellant understood the advisement to cover only *police* interrogations, we conclude that the subsequent interview in this case was not reasonably contemporaneous with the prior *Miranda* advisement. Thus, appellant should have been readvised of his *Miranda* rights before the interview with the psychiatrist.

We next address the issue of whether the use of appellant's statements to the psychiatrist constitute prejudicial error.

Appellant contends that the *Miranda* error was prejudicial in that a successful defense of diminished capacity could have reduced the homicide to involuntary manslaughter. Although appellant in this case was

charged with murder, he was convicted of voluntary manslaughter. The jury was properly instructed that in order to reduce the crime or acquit appellant, they first had to find that appellant's mental condition was such that he could not form a specific intent, or that his conduct was the product of an irresistible impulse, or that he was unconscious due to voluntary intoxication. (See CALJIC Nos. 8.48, 8.78, 8.14, 8.47, 8.48, 8.77, 8.79.)

The People introduced evidence that immediately after the shooting appellant threatened two neighbors with a handgun, stating, "I'm not going to have any damn witnesses." Furthermore, evidence was also introduced that when apprehended minutes after the killing, appellant admitted he killed the victim, by stating, "I just killed the bitch. After six years I couldn't take it any longer. No one would do anything. You guys, the DA, nobody. I shot the bitch. I shot Dovie Lampkins." This evidence undercut appellant's mental state defenses.

The defense relied on three expert witnesses to demonstrate appellant's mental capacity at the time of the crime. Dr. Christiansen testified to the effects that alcohol has on someone suffering from a diabetic condition. He testified that the brain might be affected, the diabetic might suffer from impaired judgment, the inability to think properly, and a loss of memory. James Sanderson, a clinical psychologist, testified that appellant was out of his head and not aware of what he was doing at the time of the incident and that he could not have formed intent to kill. Steven Wilson, a psychiatrist, testified that appellant exploded and went beserk for a brief period of time in his life. Wilson concluded that appellant did not have the capacity to weigh the question of killing, did not have malice aforethought, and suffered from a mental disease or defect.

Dr. Matychowiak was the only expert witness called to testify in rebuttal. He testified that appellant suffered from no mental disease or defect; did not lack any substantial capacity to appreciate the criminality of his conduct; showed no signs of being psychotic or suffering from psychosis; did not have diminished capacity to form the intent; had the substantial capacity to know what he was doing; and that he actually knew he was killing the victim a few minutes before he shot her.

The wrongful introduction of an admission is deemed prejudicial unless the People can show beyond a reasonable doubt that the error complained of did not contribute to the verdict. (*People* v. *McClary*

(1977) 20 Cal.3d 218, 230 [142 Cal.Rptr. 163, 571 P.2d 620]; *Chapman* v. *California* (1967) 386 U.S. 18, 23-24 [17 L.Ed.2d 705, 710, 87 S.Ct. 824, 24 A.L.R.3d 1065].)

Since Dr. Matychowiak was the only expert witness called on rebuttal to contradict appellant's contention that he suffered from diminished capacity at the time of the crime, we do not agree that the admission of Dr. Matychowiak's testimony did not contribute to the verdict herein beyond a reasonable doubt.

Appellant's last contention on appeal is that the statements made to Dr. Matychowiak were obtained in violation of his Sixth Amendment right to counsel. Initially respondent contends that appellant failed to raise his Sixth Amendment challenge below and thus may not raise it on appeal. Respondent concedes that appellant made a reference to the Sixth Amendment challenge in his memorandum of points and authorities which challenged the admission of Dr. Matychowiak's testimony. However, respondent contends that this assertion was merely a "vague reference to the Sixth Amendment in an argument heading, while its tone and tenor are clearly premised on a Fifth Amendment *Miranda* theory." Respondent relied heavily on *People* v. *Walker, supra,* 29 Cal. App.3d 448, a case which was reasoned primarily on Fourth and Fifth Amendment grounds. However, in *Walker,* the court reversed the defendant's murder conviction because it found that an interrogation by a prosecution-hired psychiatrist conducted the same night of defendant's arrest *also* violated his Sixth Amendment right to counsel. (*Id.,* at p. 455.) In appellant's notice of motion to suppress evidence, filed on September 27, 1979, he stated: "This motion is based upon the grounds that the examination and interrogation of the defendant was made in violation of the ... Sixth Amendment to the U.S. Constitution and Article I, section [13] of the California Constitution...."

■ While it is true that appellant did not make a specifically articulated distinction between a violation of appellant's *Miranda* rights and his *Massiah* rights as respondent contends, appellant's Sixth Amendment challenge is not a new theory advanced on appeal and appellant has properly preserved his challenge based on Sixth Amendment grounds.

Assuming arguendo that appellant properly raised his Sixth Amendment challenge on appeal, respondent argues that the psychiatric examination in the instant case was conducted "prior to the commence-

ment of judicial proceedings" and thus was not made in violation of appellant's right to counsel. Respondent cites *Massiah* v. *United States* (1964) 377 U.S. 201 [12 L.Ed.2d 246, 84 S.Ct. 1199]; *United States* v. *Wade* (1967) 388 U.S. 218 [18 L.Ed.2d 1149, 87 S.Ct. 1926]; *Brewer* v. *Williams* (1977) 430 U.S. 387 [51 L.Ed.2d 424, 97 S.Ct. 1232]; *Kirby* v. *Illinois* (1972) 406 U.S. 682 [32 L.Ed.2d 411, 92 S.Ct. 1877]; and *People* v. *Duck Wong* (1976) 18 Cal.3d 178 [133 Cal.Rptr. 511, 555 P.2d 297].) ▮ Once adversary proceedings have commenced against an accused, then at every critical stage of the proceedings he has a right to legal representation. Adversary proceedings are said to commence when judicial proceedings have been initiated either by way of formal charge, preliminary hearing, indictment, information or arraignment. (*Kirby* v. *Illinois, supra*, 406 U.S. at p. 688 [32 L.Ed.2d at pp. 416-417].)

In the instant case the chronology of events leading to appellant's trial are confusing. A careful reading of the clerk's transcript reveals that appellant was arrested on August 3. At this time he was jailed and given his *Miranda* rights. On *August 6* a criminal complaint was sworn to and subscribed. This complaint, however, was not *filed* until August 20. Also on August 6 at approximately 5 o'clock in the evening, Dr. Matychowiak conducted his jailhouse interview with appellant. Apparently, all concerned expected appellant to be arraigned the next morning, August 7. However, appellant was not arraigned until *August 30*, and the information was filed the same day.

A literal reading of *People* v. *Duck Wong, supra*, 18 Cal.3d 178, 186, would indicate that an interrogation made prior to the time that charges are *filed* does not violate the Sixth Amendment. "Neither *Isby* nor any subsequent case, however, has suggested that the per se rule should extend to the interrogation conducted before charges are filed." (*Id.*, at p. 186.) The United States Supreme Court in *Kirby* v. *Illinois, supra*, 406 U.S. 682, 688 [32 L.Ed.2d 411, 417], speaks in terms of when "adversary judicial proceedings have been initiated." The *policy* of all these Sixth Amendment cases is that the right to counsel attaches when an accusatory stage has been reached. Appellant in this case had been jailed for three days prior to the interview and a criminal complaint had been sworn to on August 6, even though it was not filed until August 20. In addition, there was no real dispute as to the identity of the victim's assailant, but rather the concern centered on the mental state of appellant. The accusatory stage has been reached when a psychiatrist interrogates the accused for the purpose of assessing his

mental state. This is true whether the psychiatrist is court-appointed (*In re Spencer* (1965) 63 Cal.2d 400-410 [46 Cal.Rptr. 753, 406 P.2d 33]), or prosecution-hired. (*People* v. *Walker, supra*, 29 Cal.App.3d 448, 453-455.) And this is true when the interview is conducted postarraignment (*Spencer, supra*) or prearraignment (*Walker, supra*).

■ The landmark case of *In re Spencer, supra*, 63 Cal.2d 400, 410, held that an examination of a defendant by a court-appointed psychiatrist constituted a critical period of judicial proceedings. While *Spencer* did not hold that the right to counsel required counsel's presence at every such examination, the court did hold that the defendant was entitled to three protective safeguards against the abuse of such examinations. The first *Spencer* safeguard requires that before submitting to a psychiatric examination, the defendant must be represented by counsel or knowingly and intelligently have waived counsel and counsel must be informed of the scheduled examination. (*Id.*, at p. 412.) The second safeguard requires that if after submitting to an examination a defendant does not place his mental condition into issue at the guilt phase of a criminal proceeding, the psychiatrist should not be permitted to testify at that phase. (*Ibid.*) The third requirement is that if the psychiatrist is permitted to testify, the jury must be instructed that any statements of the defendant made during the interview which are related to the jury during the psychiatrist's testimony may be considered only for the limited purpose of showing the information upon which the doctor based his opinion and not for the truth of the substantive content. (*Ibid.*) The second safeguard does not come into play in the instant case because appellant placed his mental condition into issue at the guilt phase of his trial. The third safeguard was properly observed at appellant's trial in that the jury was instructed as to the limited permissible use of the statements made to the physician. The court in *Spencer* stated the rationale behind its decision: "[I]f defendant's statements to the psychiatrist may be introduced at the guilt trial, defendant's need of counsel is as acute during the psychiatric interview as during the police interrogation." (*In re Spencer, supra*, 63 Cal.2d at p. 410.)

A careful reading of *Spencer* and *Walker* indicates that the event that triggers the accusatory stage in these cases is, in fact, the court-appointed or prosecution-hired psychiatric interview with the defendant, *not* the arraignment.[2] The defendant in *Walker* was arrested and jailed

---

[2]Pursuant to independent state grounds, the California Supreme Court has recently held that a defendant is entitled to counsel at a *preindictment* lineup. (*People* v. *Bustamante* (1981) 30 Cal.3d 88, 102 [177 Cal.Rptr. 576, 634 P.2d 927].)

on the evening of November 10, 1971. His jailhouse interview with a prosecution-hired psychiatrist was conducted the very same evening. There is every indication that he had not yet been arraigned. (*Walker, supra*, 29 Cal.App.3d 448, 450-452.)

As appellant was not represented by counsel during his interview with Dr. Matychowiak, and he did not knowingly and intelligently waive his right to counsel, under these facts, we find the accusatory stage had been reached. The first safeguard of *Spencer* was ignored and appellant's Sixth Amendment right to counsel was thereby violated. (*Spencer, supra*, 63 Cal.2d 400, 410; *Walker, supra*, 29 Cal.App.3d 448, 455.)

The judgment is reversed.

Franson, Acting P. J., and Zenovich, J., concurred.