The PEOPLE of the State of Colorado,
Plaintiff-Appellant,

v.

William Edward CHASE,
Defendant-Appellee.

No. 85SA365.

Supreme Court of Colorado,
En Banc.

June 2, 1986.

Stuart A. VanMeveren, Dist. Atty., Jerome B. Roselle, Steven Sharpe, Deputy Dist. Attys., Fort Collins, for plaintiff-appellant.

David F. Vela, Public Defender Joseph A. Gavaldon, Lois M. Whitesel, Deputy Public Defenders, Fort Collins, for defendant-appellee.

QUINN, Chief Justice.

The People, pursuant to C.A.R. 4.1, appeal from an order suppressing a custodial statement made by the defendant, William

E. Chase, to a California law enforcement officer, in which he admitted his involvement in several crimes committed in Fort Collins, Colorado. The district court suppressed the statement on the grounds that the interrogating officer was required as a matter of law to readvise the defendant of his *Miranda* rights prior to the interrogation, even though the officer had orally advised the defendant of these rights four days previously prior to interrogating him about crimes separate and distinct from those involved in the interrogation in question. Because the district court applied an incorrect legal standard in resolving the defendant's suppression motion, we reverse the order of suppression and remand the case for further proceedings on the suppression issue.

## I.

The defendant was charged in three separate informations for crimes arising out of three episodes in Fort Collins, Colorado. The first information charged the defendant with a number of crimes committed on January 12, 1985, including aggravated robbery, first degree burglary, menacing with a deadly weapon, first degree aggravated motor vehicle theft, second degree burglary, felony theft, and a crime of violence. In the second information the defendant was charged with the offenses of aggravated robbery, felony theft, and two counts of menacing with a deadly weapon, allegedly committed on January 10, 1985. The third information charged the defendant with an attempted aggravated robbery allegedly committed on January 7, 1985. The defendant entered pleas of not guilty to all charges, and the informations were consolidated for trial. Prior to trial, the defendant filed a motion to suppress an incriminating statement made by him to a law enforcement officer in Los Angeles, California.

The following facts were developed at the suppression hearing. On February 15, 1985, the defendant was arrested in Los Angeles, California, for burglary and was held in custody at a West Hollywood station house. On that day, Deputy Sheriff David Winkler of the Los Angeles County Sheriff's Department met with the defendant in an interview room at the jail. Deputy Winkler advised the defendant that he wanted to discuss the defendant's involvement in several Los Angeles burglaries and orally advised him of his *Miranda* rights.[1] The defendant acknowledged that he understood his rights, agreed to discuss the burglaries, and then proceeded to answer questions about them. Although Deputy Winkler knew at this time that the defendant was wanted by authorities in Fort Collins, Colorado, he did not know of the specific charges pending against the defendant in Colorado and accordingly limited his interrogation to the Los Angeles burglaries.

Subsequent to this initial interrogation, Deputy Winkler contacted an officer in the Fort Collins police department and learned the details of several robberies allegedly committed by the defendant in Fort Collins. On February 19, 1985, Deputy Winkler initiated a second interrogation with the defendant at the West Hollywood station house. Winkler testified that he did not readvise the defendant of his *Miranda* rights at this time because he felt his original advisement, given four days earlier, was adequate to cover "any discussion we would have from that point on." Winkler told the defendant that he wanted to talk to him about some robberies in Fort Collins, and the defendant spent the next twenty to thirty minutes discussing the Fort Collins incidents with the officer. The defendant, according to Winkler, did not appear confused at the interview, and no threats or promises were made as an inducement to

---

**1.** *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Deputy Sheriff Winkler testified at the suppression hearing that he read to the defendant a card which contained the following advisement:

You have the right to remain silent. Anything you say can or will be used against you in a court of law. You have the right to talk to a lawyer before we talk to you and have him present while we talk to you. If you cannot afford to hire a lawyer, one will be appointed to represent you before any questioning free of charge.

his admissions. Deputy Winkler also testified that, so far as he knew, the defendant was not subjected to any other interrogations between the initial interrogation on February 15 and the last one on February 19.

The prosecution presented additional testimony establishing that on December 30, 1984, the defendant had escaped from Lookout Mountain School, a correctional facility for juveniles in Golden, Colorado. The defendant presented no evidence in support of the motion to suppress.

The district court granted the motion to suppress, finding in pertinent part:

that the Defendant demonstrated an attitude of cooperation throughout both interrogations; the Defendant, on the 15th understood his rights resulting in a knowing, voluntary and intelligent waiver of his rights; that on the 19th the Defendant again agreed to discuss his involvement in the commission of the crimes; that if the Defendant had been advised of his rights he would have expressly waived same as he wanted to cooperate; and that nothing was shown that he did not know or recall his rights.

Notwithstanding these findings, the court concluded as a matter of law that Deputy Winkler was required to readvise the defendant of his *Miranda* rights prior to the interrogation on February 19, 1985, because of the following factors: the four-day interval between the initial *Miranda* advisement and the subsequent interrogation on February 19; the difference in the crimes discussed in the first and second interrogations; and the oral nature of the advisement at the first interrogation.

The People argue that the district court erred in failing to consider the totality of circumstances surrounding the interrogation on February 19, 1985, and, instead, in adopting what almost constitutes a per se requirement of a *Miranda* readvisement in any sequential interrogation involving crimes separate and distinct from the subject matter of an initial custodial interrogation. We conclude that the factors considered by the district court, although relevant to the suppression motion in this case, are not necessarily conclusive on the validity of a *Miranda* waiver, and that, consequently, the trial court erred in restricting its consideration to these factors only, rather than in considering the totality of circumstances surrounding the defendant's interrogation.

## II.

Resolving a suppression motion based on an allegedly inadequate *Miranda* advisement requires a two-step analysis: first, the court must determine whether the defendant was adequately warned of his privilege against self-incrimination and his right to counsel; and, second, the court must determine whether the defendant knowingly, intelligently, and voluntarily waived these rights. *Miranda v. Arizona*, 384 U.S. 436, 444, 86 S.Ct. 1602, 1612, 16 L.Ed.2d 694 (1966); *People v. Spring*, 713 P.2d 865, 869 (Colo.1985), *cert. granted*, — U.S. —, 106 S.Ct. 1961, 90 L.Ed.2d 368 (1986); *People v. Pierson*, 670 P.2d 770, 775 (Colo.1983); *People v. Fish*, 660 P.2d 505, 508 (Colo.1983); *People v. Lee*, 630 P.2d 583, 588 (Colo.1981), *cert. denied*, 454 U.S. 1162, 102 S.Ct. 1036, 71 L.Ed.2d 318 (1982). The prosecution bears the burden of proving the validity of a *Miranda* waiver by clear and convincing evidence. *E.g., Pierson*, 670 P.2d at 777; *Fish*, 660 P.2d at 508; *People v. Lowe*, 200 Colo. 470, 476, 616 P.2d 118, 123 (1980).[2]

---

**2.** If the requirements for a valid waiver of *Miranda* rights are satisfied, then a consideration separate and apart from the *Miranda* advisement and waiver is whether the statement is voluntarily made. The test of voluntariness, in this context, means that the statement was the product of a rational intellect and a free will, and was not the result of any force, threats, promises, or other forms of undue influence that affected the defendant's decision to speak. *E.g., Townsend v. Sain*, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); *Culombe v. Connecticut*, 367 U.S. 568, 81 S.Ct. 1860, 6 L.Ed.2d 1037 (1961) (Frankfurter, J., opinion announcing judgment of court); *Blackburn v. Alabama*, 361 U.S. 199, 80 S.Ct. 274, 4 L.Ed.2d 242 (1960); *People v. Connelly*, 702 P.2d 722 (Colo.1985), *cert. granted*, — U.S. —, 106 S.Ct. 785, 88 L.Ed.2d

The validity of a waiver must be resolved on the basis of the totality of circumstances surrounding the making of the statement. *Spring,* 713 P.2d at 872–73; *Pierson,* 670 P.2d at 775. Certainly one factor to consider is the lapse of time between an initial *Miranda* advisement and a subsequent interrogation. While the better practice is for an interrogating officer to advise an accused of his rights before each interrogation, repeated warnings are not indispensable to a finding that an accused validly waived his privilege against self-incrimination and his right to counsel. *E.g., Biddy v. Diamond,* 516 F.2d 118, 122 (5th Cir.1975), *cert. denied,* 425 U.S. 950, 96 S.Ct. 1724, 48 L.Ed.2d 194 (1976); *People v. Thiret,* 685 P.2d 193, 204 n. 11 (Colo. 1984); *People v. Quirk,* 129 Cal.App.3d 618, 627–28, 181 Cal.Rptr. 301, 305 (1982).[3] Another factor is the extent to which a suspect "has been informed or is aware of the subject matter of the interrogation prior to its commencement." *Spring,* 713 P.2d at 873; *accord Jones v. People,* 711 P.2d 1270 (Colo.1986). Still other factors include whether the accused or the interrogating officer initiated the interview, whether and to what extent the accused was reminded of his rights prior to the interrogation (for example, by the officer's asking the defendant if he recalled his rights, understood them, or wanted an attorney), the clarity and form of the defendant's acknowledgement and waiver, if any, and the background and experience of the accused in connection with the criminal justice system. No one factor is determinative, but each is important and should be appropriately considered. The ultimate question in situations involving an initial *Miranda* advisement and waiver followed by a later interrogation not preceded by another *Miranda* advisement is whether, considering the totality of circumstances, the defendant was sufficiently aware of the continuing nature of his constitutional rights as to render any subsequent statement the result of a knowing, intelligent, and voluntary waiver of those rights. *Quirk,* 129 Cal.App.3d at 629, 181 Cal.Rptr. at 306; *Thiret,* 685 P.2d at 204 n. 11; *see Biddy,* 516 F.2d 118; *Moten v. State,* 231 Ga. 642, 203 S.E.2d 527 (1974); *Grimes v. State,* 454 N.E.2d 388 (Ind.1983).

### III.

In this case the court found that the defendant understood his rights on February 15, 1985, and knowingly, intelligently, and voluntarily waived those rights in the immediately ensuing interrogation, that he agreed to discuss his involvement in the Fort Collins crimes with Deputy Winkler on February 19, 1985, that he would have again waived his rights during the second interrogation if he had been advised of them, and that there was no evidence showing that he did not know or recall his rights. Notwithstanding these findings, however, the district court suppressed the defendant's statement solely on the basis of three factors: the four-day interval between the initial advisement and the subsequent interrogation; the difference in charges underlying both interrogations; and the oral nature of the initial *Miranda* advisement. Whether the court would have reached the same result by considering the totality of circumstances surrounding the second interrogation, rather than merely the three factors expressly mentioned by the court, cannot be determined from the court's ruling. It appears, however, that the court considered the presence of these factors determinative of the suppression motion, regardless of whether the statement on February 19, 1985, was the product of a knowing, intelligent, and voluntary waiver of the defendant's *Miranda* rights. That the court labored under this misapprehension is apparent from

---

763 (1986); *People v. Raffaelli,* 647 P.2d 230 (Colo.1982). Because the controversy in this case centers on the validity of the *Miranda* waiver, we do not consider the issue of voluntariness.

**3.** We hasten to add, however, that *Miranda* warnings, once given, are not to be accorded "unlimited efficacy or perpetuity." *United States v. Hopkins,* 433 F.2d 1041, 1045 (5th Cir. 1970), *cert. denied,* 401 U.S. 1013, 91 S.Ct. 1252, 28 L.Ed.2d 550 (1971).

the statement, made in the course of the suppression ruling, that "[t]his ruling may be considered by some to be 'form over substance' but law enforcement officers know that a defendant must be advised of his rights and appropriately waive same before interrogating."

Because it appears from the record that the district court did not consider the totality of circumstances in resolving the defendant's motion, we reverse the order of suppression and remand the case to the district court for further proceedings consistent with the views herein expressed.