Filed 5/8/26  In re M.G. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Tehama)

| | |
|---|---|
| In re M.G., a Person Coming Under the Juvenile Court Law. | C105014 |
| TEHAMA COUNTY DEPARTMENT OF SOCIAL SERVICES,<br>　　　　Plaintiff and Respondent,<br><br>　　　v.<br><br>B.T.,<br>　　　　Defendant and Appellant. | (Super. Ct. No. 25JU-000040) |

B.T., the mother of minor M.G. (mother), appeals from the juvenile court's orders denying her petition under Welfare and Institutions Code section 388 and terminating her parental rights under section 366.26.[1]  She maintains that she showed a change of circumstance sufficient to modify the court's prior order bypassing her for reunification services.  She also contends that the parental-benefit exception to adoption applied.  We see no error in the juvenile court's orders and therefore affirm.

---

[1]  Undesignated statutory references are to the Welfare and Institutions Code.

1

I.

M.G. was born to mother and G.R. (father) in April 2025.  Mother has four older children (M.G.'s half-siblings) who were removed from her care in prior dependency proceedings due to unresolved substance abuse issues and neglect.  She also has numerous prior convictions for drug-related offenses.  Mother began drinking at age seven, started using marijuana by age nine, and was addicted to methamphetamine by age 11.  At the time of the present dependency proceedings, mother was 34 years old and had struggled for over two decades battling addiction.

Three days after M.G.'s birth, the Tehama County Department of Social Services (Department) filed a dependency petition alleging a failure to protect (§ 300, subd. (b)(1)) and abuse of a sibling (§ 300, subd. (j)).  The petition asserted that mother had untreated substance abuse issues that hindered her ability to provide safe and adequate care for M.G.  Mother received minimal prenatal care during her high-risk pregnancy and exposed M.G. to methamphetamine and THC in utero, although M.G. tested negative for substances at birth.  The petition further alleged that mother's untreated substance abuse issues had led to the removal of M.G.'s half-siblings from mother's care.

The Department's detention report described mother's long history of significant substance abuse.  She tested positive for methamphetamine in five prior dependency cases with the Department.  Her reunification services for M.G.'s half-siblings in those cases were terminated, and termination of her parental rights for those children was pending.  Mother did not participate in the substance abuse or housing services the social worker offered while pregnant with M.G., and mother tested positive for THC when M.G. was born.  The Department was concerned that mother would continue to abuse substances, including methamphetamine, placing M.G. at risk of being exposed to poor living conditions, lack of supervision, and threat of physical harm or neglect as her half-siblings had been.

2

The juvenile court detained M.G. in foster care and ordered supervised visits for mother five times per week for a total of five hours.

The Department's May 2025 jurisdictional report recommended that the juvenile court sustain the petition, declare M.G. a dependent child, and set the matter for disposition. By that point, mother's parental rights had been terminated as to two of minor's half-siblings. Mother attended M.G.'s newborn doctor appointment in April 2025 and had enrolled in parenting classes in May; she said she was attending drug and alcohol services to "stay on track." Mother visited M.G. when M.G. was hospitalized for pneumonia. Mother continued to test positive for THC in April 2025.

In an update submitted to the juvenile court toward the end of May 2025, the Department reported that mother was visiting with M.G. at the supervised visitation center five days a week for one hour a day and that the visits were going well. Mother claimed she had been clean for 157 days, which meant that M.G. was exposed to substances in utero for approximately five months. The Department noted that, in the prior dependency cases, mother tested positive for methamphetamine and amphetamines in May 2024 and had 25 no call, no show positive tests from May 2024 to November 2024 (when mother was pregnant with M.G.).

The update also informed the juvenile court that M.G. was hospitalized for a "brief resolved unexplained event" in May 2025, and her caregiver reported that she was having "jitters" about every 15 minutes, sometimes causing her eyes to roll back in her head. During additional medical testing, M.G. had eight episodes of " 'blank stare,' " although her other vitals were normal. Mother attended a follow-up appointment with M.G.'s pediatrician.

The concurrently filed dispositional report recommended that M.G. remain in foster care and that the juvenile court bypass mother for reunification services under section 361.5, subdivision (b)(10) and (11). Those provisions allow a juvenile court to bypass a parent for services if the parent has had reunification services terminated for a

sibling or half-sibling of a dependent child, or if the parent has previously had his or her parental rights terminated as to another child, if the parent has not subsequently made a reasonable effort to treat the problems that led to the removal of the sibling or half-sibling from that parent. (§ 361.5, subd. (b)(10) & (11).) The report additionally recommended that the court decline to offer reunification services to father and set a section 366.26 hearing.

The report noted that, while mother visited consistently with M.G., was attentive and responsive to her needs during visits, and was participating in various services, the Department did not believe she would be ready to care for M.G. in six months if the court granted reunification services. To support its recommendation, the Department cited mother's history of abusing illegal substances, achieving brief periods of sobriety when under court supervision, and then returning to substance abuse and criminal activities when no longer supervised. The Department stated that, in 2013, mother stayed clean for approximately 10 months with family maintenance services, but relapsed, causing two of her older children to be re-detained; in 2022, she remained sober for about a year, but again relapsed, and her older children were eventually detained again in 2024. The report also recounted mother's extensive child welfare history concerning M.G.'s half-siblings, including numerous reports of dangerous and unsanitary conditions in the home. The report stated that "[a]ll of [mother's] juvenile dependency cases involve her children being removed and detained due to living in deplorable conditions while she was using drugs. A recurrent theme has also been her involvement and subjection of the children to domestic violence relationships." Because mother had not demonstrated any long-term changes despite numerous services offered in her prior dependency cases, including domestic violence support, wraparound services, general counseling, parent education, family therapy, and substance abuse treatment, the Department believed she would put M.G. in similar dangerous situations if she were returned to mother's care.

4

The parties filed written briefs on the bypass issue. The Department argued that mother's efforts at rehabilitation were not adequate to treat the problems leading to the removal of M.G.'s half-siblings. Rather, they were reflective of the same pattern that had plagued mother since the first removal of one of her children 12 years earlier: getting clean while under court supervision but eventually relapsing and neglecting the care and safety of her children. Mother argued that the Department had failed to show she should be bypassed for services under section 361.5, subdivision (b)(10) and (11). She had been sober for 175 days (nearly six months), consistently attended substance abuse meetings and other drug treatment, sought out a mental health evaluation, secured a sponsor, and had a strong support system. She no longer used THC and lived with her sister in a stable home with adequate baby supplies.

The juvenile court held a combined contested jurisdictional and dispositional hearing on June 3, 2025. Although the record before us does not include a reporter's transcript for this hearing, other documents in the record indicate that mother testified on her own behalf, called her sponsor and the social worker as witnesses, and submitted multiple exhibits into evidence to show her progress in addressing her substance abuse issues. Her counsel argued against finding jurisdiction and objected to bypassing mother for services.

The juvenile court sustained the petition as true, declared M.G. a dependent child, determined that the Department had met its burden by clear and convincing evidence to bypass mother for services, and found that mother had failed to show that providing her with reunification services was in M.G.'s best interest. The court ordered supervised visitation one time a month for one hour and set a section 366.26 hearing.

II.

In August 2025, mother filed a petition under section 388 to change the juvenile court's order bypassing her for services. The petition asserted that mother had obtained and completed services on her own. Mother stated that she had been sober for 255 days,

5

participated in drug treatment, planned to become a heavy equipment operator, and took steps to obtain a loan and to save to buy a home. She argued that providing her with reunification services would be better for M.G. because it would allow M.G. to be with her mother and reaffirm their mother-daughter bond.

The next month, the Department filed its section 366.26 report, recommending that the juvenile court terminate parental rights to make then five-month-old M.G. available for adoption. M.G. was considered generally adoptable, despite her earlier health problems, due to her young age. Prospective adoptive parents had not yet been identified, but the Department continued to assess family members as possible placement resources, and M.G.'s current caregiver was identified as a concurrent placement option.

According to the section 366.26 report, mother had visited with M.G. once since the last court hearing. The Department recounted in detail mother's history since at least 2012 of abusing illicit substances, committing drug-related crimes, having her children removed from her care due to her substance abuse and neglect, and achieving sobriety for short periods of time, only to repeatedly relapse once her other children were returned to her care. Her substance abuse and neglect of her older children spanned nearly a decade, and the Department believed that M.G. deserved a life of stability, unlike the turbulent times her half-siblings had endured.

In October 2025, the juvenile court held a combined hearing to address mother's section 388 petition and to consider the termination of parental rights. The court admitted the Department's section 366.26 report into evidence as well as 14 exhibits mother offered to demonstrate her sobriety and treatment efforts.

Mother testified that she had been clean for 316 days, or a little over 10 months (not including marijuana), which she claimed was her longest period of sobriety since she was a teenager. She said this period of sobriety was different because she sought out services on her own after realizing the severity of her substance abuse problem. Mother

acknowledged using marijuana while pregnant with M.G. but said her doctor had prescribed it.

Mother attended weekly Narcotics Anonymous meetings and completed the first step of the 12-step program; she also attended other group programs that provided her with a solid support system. She participated in therapy and parenting classes and applied what she had learned when interacting with two of her older children. She testified that she was renting a house and was in escrow to purchase a home. She was employed as an in-home supportive services caregiver, earned about $3,000 a month, and had a driver's license and working car. She wanted to obtain logging and heavy equipment operator certificates.

Mother said that when children learn they were adopted, "it hinders them. It affects them in some way." Mother believed she could provide everything that the caregiver was currently providing to M.G.; in mother's view, nothing was lacking in her home or in her parenting skills compared to the caregiver. Mother described her relationship with two of her older children and their caregivers as positive and said she attended the children's extracurricular activities when given the opportunity. One of the half-siblings had met M.G. in passing, but mother wanted them to know M.G. if possible.

Since the dispositional hearing in June 2025, mother had visited with M.G. on four occasions, for an hour each time, per the court's order. The visits went well, although mother feared M.G. "wouldn't recognize me so much" by the last visit. She also attended several of M.G.'s medical appointments.

Following the close of evidence, mother's counsel argued that circumstances had changed and that it was in M.G.'s best interest to provide mother with reunification services. Counsel emphasized that mother sought out services on her own but could accomplish more with court-ordered services. If the juvenile court did not reopen reunification services, counsel urged the court not to terminate mother's parental rights or

select adoption as the permanent plan but instead allow mother more time to demonstrate her dedication to her recovery and to reunite with M.G. sometime in the future.

M.G.'s appointed counsel agreed with mother that there was a change in circumstance sufficient to justify giving mother services.

The Department asked the juvenile court to deny the section 388 petition and terminate mother's parental rights because there had been no real change in circumstances. Mother's history included significant drug addiction with sporadic periods of sobriety followed by continuous relapses. The gravity of the harm of placing M.G. in that environment was high, and it was not in her best interests to grant mother reunification services or delay adoption. The court took the matter under submission.

One week later, the juvenile court issued its ruling denying mother's section 388 petition and terminating parental rights. Regarding mother's petition, the court found neither a substantial change in circumstance nor that it would be in M.G.'s best interests to provide mother with services. The court reasoned that mother failed to show a significant change in circumstances when considering her extensive dependency history, which had resulted in her other children living in "deplorable conditions"; mother's decades of drug abuse and drug-related criminal offenses; and the numerous services and resources provided to her in prior dependency cases that did not successfully address her serious drug addiction. The court further reasoned that because M.G. was removed at birth and mother had minimal contact with her during visitation, they did not share a significant bond. The court acknowledged that no evidence was presented regarding M.G.'s bond with her caregiver, but it noted that the caregiver was identified as a concurrent placement for purposes of adoption. The court determined that it was not in M.G.'s best interest to reopen reunification services for mother; rather, it was in the child's "best interest to have permanency in a stable, drug-free home." The court thus denied the section 388 petition, adopted the Department's proposed findings and orders as to the section 366.26 hearing, and terminated mother's and father's parental rights.

Mother timely appealed from both the order denying her section 388 petition and the order terminating her parental rights.

DISCUSSION

I.

Mother first contends the juvenile court abused its discretion in denying her section 388 modification petition.

A petition to change a juvenile court order under section 388 must allege that there are changed circumstances or new evidence to justify the requested order and that the requested order would serve the minor's best interests. (*In re Malick T.* (2022) 73 Cal.App.5th 1109, 1122.) The petitioner has the burden of proof on both points by a preponderance of the evidence. (*Ibid.*; Cal. Rules of Court, rule 5.570(h)(1)(D).) A juvenile court's decision on a modification petition "will not be disturbed on appeal in the absence of a clear abuse of discretion." (*In re Jasmon O.* (1994) 8 Cal.4th 398, 415.)

Mother maintains that her significant efforts to address her drug addiction and establish a stable life demonstrated a change in circumstances. The juvenile court found otherwise, and we conclude there is adequate support in the record for that determination. The record before the juvenile court showed that, while mother participated in some services and treatment on her own, she had only completed step one of the 12-step Narcotics Anonymous program and had been sober for only 10 months (not including marijuana)—one month longer than what she testified to as her longest period of sobriety over 23 years of severe drug addiction. The record further showed a recurring pattern of mother receiving treatment and services, achieving periods of sobriety while under court supervision, but then suffering relapses that endangered the health and safety of her other children and prevented her from reunifying with them. On that record, the juvenile court did not abuse its discretion in concluding that mother's current efforts did not establish a genuine change for purposes of revisiting its earlier order bypassing mother for reunification services. (See *In re Cliffton B.* (2000) 81 Cal.App.4th 415, 423-424

9

[father's seven months of sobriety, "while commendable, was nothing new," in light of long history of drug use and "periods of sobriety alternat[ing] with recurring drug use"]; *In re Ernesto R.* (2014) 230 Cal.App.4th 219, 223 ["Appellant's completion of a drug treatment program, at this late date, though commendable, is not a substantial change of circumstances"].) And because we conclude the trial court committed no error with respect to the first element of section 388, we need not address mother's argument that ordering reunification services would be in M.G.'s best interest.

## II.

Mother next contends that the juvenile court erred when it failed to apply the parental-benefit exception and terminated her parental rights under section 366.26. We disagree.

The parental-benefit exception to the termination of parental rights applies where a parent has "maintained regular visitation and contact with the child and the child would benefit from continuing the relationship." (§ 366.26, subd. (c)(1)(B)(i).) In *In re Caden C.* (2021) 11 Cal.5th 614, 631, 636 (*Caden C.*), our state supreme court explained that, to qualify for the exception, a parent must prove, by a preponderance of the evidence: "(1) regular *visitation and contact*, and (2) a *relationship*, the continuation of which would *benefit* the child such that (3) the termination of parental rights would be *detrimental* to the child." On appeal, we review the first two elements for substantial evidence and the third for abuse of discretion. (*Id.* at pp. 639-640.)

Mother initially faults the juvenile court for failing to analyze the case in accordance with *Caden C.* This contention is misplaced because mother never asked the juvenile court to apply the parental-benefit exception. Furthermore, an appellate court will presume, in the absence of evidence to the contrary, that the juvenile court was aware of and complied with the law, including *Caden C.* (*In re A.L.* (2022) 73 Cal.App.5th 1131, 1156; *People v. Jacobo* (1991) 230 Cal.App.3d 1416, 1430.)

Mother points to nothing in the record suggesting that the juvenile court was unaware of the relevant law.

Mother has also failed to show any error in the juvenile court's decision to terminate parental rights, because there is substantial evidence to support an implied finding that the parental-benefit exception does not apply. The first element under *Caden C.*—regular visitation and contact—is "straightforward. The question is just whether 'parents visit consistently,' taking into account 'the extent permitted by court orders.' " (*Caden C.*, *supra*, 11 Cal.5th at p. 632.) Here, the parties agree, as do we, that mother regularly visited with M.G. to the extent permitted by the juvenile court's orders, satisfying the first element.

But substantial evidence supports an implied finding that the second element—that minor would benefit from continuing the relationship with her parent—did not apply. That prong of the analysis focuses on the child and recognizes that the parental relationship may be shaped by a multitude of factors such as " '[t]he age of the child, the portion of the child's life spent in the parent's custody, the "positive" or "negative" effect of interaction between parent and child, and the child's particular needs.' " (*Caden C.*, *supra*, 11 Cal.5th at p. 632.) In assessing this element, courts often consider how children feel about, interact with, look to, or talk about their parents. (*Ibid.*)

Here, the juvenile court found mother and M.G. did not share a strong bond, given their limited contact during the dependency proceedings, and substantial evidence in the record supports that finding. M.G. was one day old when she was detained in connection with the dependency proceeding. She has never lived with mother or been in her care and has instead lived her entire life with her caregiver. Mother initially was allowed five one-hour visits per week in April and May of 2025, and her visits were generally positive. But visits were reduced to one hour per month from June to October 2025, when the juvenile court held the section 366.26 hearing. Mother herself testified that since the June dispositional hearing, she had only visited M.G. four times for one hour

each visit and was concerned at the last visit that M.G. would not recognize her based on their limited time together.  There was no evidence proffered to show a strong and reciprocal bond between mother and M.G.  And as an infant, M.G. was too young to express her own feelings about her mother.  Given their limited interactions, substantial evidence supports the conclusion that mother failed to prove the existence of a relationship, the continuation of which would benefit M.G.  (*In re Andrea R.* (1999) 75 Cal.App.4th 1093, 1109 [appellate record supported implied finding by juvenile court that parents had failed to establish parental-benefit exception]; see also *Bowers v. Bernards* (1984) 150 Cal.App.3d 870, 873-874, italics omitted ["the power of an appellate court [on substantial evidence review] begins and ends with the determination as to whether, on the entire record, there is substantial evidence, contradicted or uncontradicted, which will support the determination, and when two or more inferences can reasonably be deduced from the facts, a reviewing court is without power to substitute its deductions for those of the trial court"].)  Given this conclusion, we need not address the third element under *Caden C.* concerning whether it would be detrimental to M.G. to sever the relationship.  (*Caden C.*, *supra*, 11 Cal.5th at pp. 631, 633 & 636.)

## DISPOSITION

The juvenile court's orders denying mother's section 388 petition and terminating her parental rights under section 366.26 are affirmed.


                                                       _____

                                                            FEINBERG, J.

We concur:


_____

MAURO, Acting P. J.


_____

RENNER, J.